UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CORIE REED, ) | |
| individually and on behalf of all others ) | |
| similarly situated ) | |
| ) | |
| Plaintiff, ) | 1:21-CV-04066 |
| ) | |
| v. ) | Judge Edmond E. Chang |
| ) | |
| MRS BPO, L.L.C. d/b/a MRA ASSOCIATES ) | |
| OF NEW JERSEY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Corie Reed brought this proposed class action in state court against MRS BPO, a debt collection agency, alleging violations of the Fair Debt Collection Practices Act (commonly known in debt-collection circles as the FDCPA), 15 U.S.C. § 1692 *et seq*. R. 1-1, Compl.[1] Reed claims that MRS violated the FDCPA in two ways: (1) by sharing her private information with a third-party letter vendor without her consent; and (2) by placing language or symbols other than MRS' address on the debt collection letter. R. 1-1, Pl.'s Mot. Class Cert. ¶¶ 5–10. MRS removed the case to federal court, invoking federal-question jurisdiction. R. 1, Not. of Removal; 28 U.S.C. § 1441. Because there are no facts alleging concrete harm resulting from MRS' alleged federal statutory violations, Reed lacks Article III standing. The case must be remanded to state court for lack of subject matter jurisdiction.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

## I. Background

For purposes of this motion, the Court accepts as true the allegations in the Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

According to MRS, Reed incurred a debt related to a JPMorgan Chase Bank account. R. 1-1, Compl. ¶ 17. When she failed to pay the debt, her account went into default. *Id.* ¶ 18. As part of trying to collect the outstanding debt, MRS used a letter vendor to send a letter to Reed about the defaulted account. *Id.* ¶¶ 20, 27. MRS gave the letter vendor Reed's name and address, the details of her account—including that she owed money—and other personal information. *Id.* ¶ 28. The letter vendor then populated a prewritten template with some or all of the information and mailed the letter to Reed on MRS' behalf. *Id.* ¶ 29.

Reed received and read the letter, which came in an envelope with a transparent window that showed Reed's name, address, and a return address. Compl. ¶¶ 24,36–37. The envelope window also showed a bar code and a series of numbers other than MRS' address. *Id.* ¶¶ 37–38. Reed had not given MRS consent to share her personal information with the letter vendor. *Id.* ¶ 31.

## II. Legal Standard

Removal of a case to federal court is typically governed by 28 U.S.C. § 1441. Generally speaking, so long as a case could have been filed in federal court, the case may be removed. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 890 (7th Cir. 2013). If, after removal, "it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. 1447(c); *see also*

*Collier v. SP Plus Corporation*, 889 F.3d 894, 895 (7th Cir. 2018) (per curium) (explaining that remand is required when jurisdiction is lacking). "The party seeking removal has the burden of establishing federal jurisdiction." *Schur v. L.A. Weight Loss Ctrs.*, 577 F.3d 752, 758 (7th Cir. 2009). So in removal cases such as this, MRS bears the burden of showing that the plaintiff had Article III standing at the time of removal. *See Collier*, 889 F.3d at 896. Failure to meet this burden results in the remand of the removed case. 28 U.S.C. § 1447(c); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993). When determining whether a defendant has met this burden, the Seventh Circuit has cautioned that "[c]ourts should interpret the removal statute narrowly," *id.*, and resolve doubts about removal in favor of the plaintiffs' choice of forum in state court, *Morris v. Nuzzo*, 718 F.3d 660, 668 (7th Cir. 2013).

"Subject-matter jurisdiction is the first issue in any case," *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019), which includes Article III's requirement of standing. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To satisfy Article III's standing requirement at the pleading stage, the Complaint must contain facts that plausibly suggest that the plaintiff suffered an injury-in-fact that is fairly traceable to the conduct of the defendant and can be redressed by a favorable decision. *Larkin v. Finance Sys. of Green Bay, Inc.*, 982 F.3d 1060, 1064 (7th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)); *Bazile v. Finance Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020). An injury-in-fact must be both concrete and particularized. *Spokeo*, 578 U.S. at 339. A "bare procedural violation, divorced from any concrete harm" does not satisfy the injury-in-fact

requirement of standing. *Casillas v. Madison Avenue Associates, Inc.*, 926 F.3d 329, 332 (7th Cir. 2019) (cleaned up).[2]

### III. Analysis

To have standing to bring a federal case, a "plaintiff must have (1) suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 330. The question here is whether Reed suffered an injury in fact arising from the nonconsensual communication of her information by MRS to the mailing vendor and from MRS' inclusion of symbols other than its address on the envelope mailed her.[3] An injury in fact occurs when a plaintiff "suffered an invasion of a legally protected interest that is *concrete and particularized*." *Id.* at 339 (emphasis added) (cleaned up). In *Spokeo*, the Supreme Court explained that "[a]lthough tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that *intangible* injuries can nevertheless be concrete." *Id.* at 340 (emphasis added).[4] In determining which intangible injuries are sufficient to confer standing and which are not, *Spokeo* set out a basic principle: a "bare procedural violation" of a statute is *not* automatically enough to satisfy Article III's concreteness requirement. 578 U.S. at 341. A

---

[2]This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

[3]Neither party suggests that the inclusion of symbols caused a harm beyond the bare statutory violation sufficient to qualify for an Article III injury in fact. So the Court need not analyze whether that allegation would be sufficient to confer standing.

[4]At the same time, concreteness is indeed a requirement that is separate and apart from the Article III requirement that the injury be "particularized" to the individual plaintiff. *Spokeo*, 578 U.S. at 339.

legislature's judgment in creating a legally protected interest protected by a statute is an important consideration, but to be *concrete*, the interest must still be accompanied by "an appreciable risk of harm to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 887 (7th Cir. 2017) (cleaned up); *see also Scanlan v. Eisenberg*, 669 F.3d 838, 845 (7th Cir. 2012) (recognizing the importance of state legislative judgments).

By way of background, the "primary goal of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices." *Schlaf v. Safeguard Property, LLC*, 899 F.3d 459, 465 (7th Cir. 2018) (cleaned up). The FDCPA's provisions thus focus on "eliminat[ing] abusive debt collection practices by debt collectors," "insur[ing] that those debt collectors who refrain from using abusive debt collections practices are not competitively disadvantaged," and "promot[ing] consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Reed alleges that MRS violated 15 U.S.C § 1692c(b) by sharing her personal information with a mailing vendor without her consent, and also that MRS violated § 1692f(8) when it sent Reed a collection letter in an envelope that showed symbols other than its address. Compl. ¶¶ 28–34, 41.

On the first violation, Section 1692c(b) limits to whom debt collectors may send communications when trying to collect debt:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector … a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if

5

>otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b). Reed argues that because mailing vendors are not among the authorized recipients of communications under Section 1692c(b), MRS violated the statute by communicating her information to the mailing vendor. And critically, Reed asserts that she suffered no concrete harm or appreciable risk of harm other than the statutory violation itself. R. 10, Pl.'s Br. at 1.

A bare procedural violation of the FDCPA, standing alone, is not automatically enough to establish an injury in fact for Article III standing. *Casillas*, 926 F.3d at 332. The Supreme Court reiterated recently in *TransUnion* that "Congress's creation of a statutory prohibition ... does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III ...." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). The question here is whether Reed's allegations show a concrete harm beyond the bare procedural violation.[5]

Reed herself contends that the answer is no. Pl.'s Br. ¶ 9. Reed says that she has not alleged a concrete harm beyond the statutory violation, nor are there any facts in the Complaint that could support such an allegation. *Id.* ¶ 3. MRS responds by first pointing to a general statement embedded in Reed's class allegations—a reference to "damages or other financial detriment." R. 12, Def.'s Br. at 3. MRS BPO continues by essentially asserting that even if there are no allegations in the

---

[5]There is no need to address standing based on a risk of future harm because Reed seeks statutory damages, not injunctive relief.

6

Complaint that Reed suffered a concrete harm, she has not expressly stated that she did *not* suffer an actual or concrete injury. *Id*. If the argument sounds confusing, that is because it is. The ambit of the federal courts has never been to peer past the plaintiff's allegations and muse about whether the plaintiff *really* suffered a harm and just failed to mention the harm in the pleadings. And in fact, as noted, in removal cases like this "federal courts should interpret the removal statute narrowly, resolving any doubt in favor of the plaintiff's choice of forum in state court." *Schur*, 577 F.3d at 758. MRS' approach takes the opposite tack. So long as the Plaintiff is not seeking actual damages (in contrast to statutory damages), the Court will not foist that remedy on her and the proposed class.

Here, the Complaint simply lacks "clearly allege[d] facts demonstrating each element" of standing. *Spokeo*, 578 U.S. at 338 (cleaned up). So there is no Article III jurisdiction over the case. Although the analysis could end there, for the sake of completeness, the Court will address the theories of harm that MRS imputes to the Complaint.

MRS' arguments rely on the Supreme Court's recognition that, although at times less readily identifiable, intangible harms can be sufficiently concrete for standing. *See Spokeo*, 578 U.S. at 340. Following the analytical frameworks laid out in *Spokeo* and *TransUnion*, MRS BPO contends that Reed's injuries are concrete because they have a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Def.'s Br. at 4–6. According to MRS, the analogous harm in Reed's case is the disclosure of private information. *Id*. at 5–6.

7

In Illinois, a "successful cause of action for the public disclosure of private facts requires the plaintiff to prove that: (1) publicity was given to the disclosure of private facts; (2) the facts were private and not public facts; and (3) the matter made public would be highly offensive to a reasonable person." *Wynne v. Loyola Univ. of Chicago*, 741 N.E.2d 669, 676–77, (Ill. App. Ct. 2000) (cleaned up). It is true that the Supreme Court reiterated in *TransUnion* that a plaintiff's injury need not be an "exact duplicate" of the analogous tort. 141 S. Ct. at 2209. It must, however, bear a close relationship to the type of harm that flows from the original tort. *Id*. In *TransUnion*, the Supreme Court compared the alleged harms in that case to the tort of defamation and noted that many American courts have *not* "necessarily recognized disclosures to printing vendors as actionable publications." 141 S. Ct. at 2210 n. 6. *TransUnion* thus supports the conclusion that that when MRS gave Reed's contact information to the letter vendor, MRS did not inflict a harm with a close enough of relationship to defamation. Put simply, there is no actionable publication when giving information to a letter vendor.

In any event, rather than point to defamation, MRS analogizes what it allegedly did to the disclosure to private facts. But if disclosure to a printing vendor is not an actionable publication, as the Supreme Court has said in the context of defamation, then it is hard to imagine why the disclosure is analogous to public disclosure of private facts. The definition of publicity set forth in the Restatement (Second) of Torts makes this clear by requiring much more widespread publicity:

> [Publicity] means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as

> substantially certain to become one of public knowledge … Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.

Restatement (Second) of Torts, § 652D. Nothing on the scale of that publicity is alleged, so disclosure to the letter vendor is inapt to the tort of public disclosure of private facts.

It is true that Reed's motion for class certification nods to potential privacy concerns, for example, by alleging that an unauthorized third party (the letter vendor) now possesses Reed's information and that MRS disregarded the propriety and privacy of the information it disclosed. Pl.'s Mot. Class Cert. ¶¶ 12, 14. Again, however, neither the Complaint nor Reed's jurisdictional statement include facts suggesting that the mailing vendor made her information public, or that more than a single person even read Reed's information. If anything, based on the allegations that a letter template was used, it is plausible that the information was simply populated by computer into the pre-made letter template.[6] So, again, there are no allegations of a concrete injury in fact sufficient to confer Article III standing.[7]

---

[6] The Court notes that the question of standing is not a generic one: "Standing often depends on what theory a plaintiff advances and how injury would be proved." *Smith v. GC Servs. Ltd. P'ship*, 986 F.3d 708, 711 (7th Cir. 2021). Although the Complaint here does not include allegations that Reed suffered harms with a close relationship to the harms caused by those of other traditional torts, *TransUnion*, 141 S. Ct. at 2208–10, it is still possible that on suitable facts a violation of the FDCPA through a mail-vendor could cause intangible harm closely related to the harm caused by invasion of privacy torts.

[7] It is worth noting that a case relied on by MRS, *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 994 F.3d 1341 (11th Cir.) (*Hunstein I*), has not only been vacated and superseded on rehearing, 17 F.4th 1016 (11th Cir. 2021) (*Hunstein II*), even the amended opinion has been vacated and rehearing en banc has been granted. 17 F.4th 1103 (11th Cir. 2021). In any event, this Court finds the reasoning of the dissent in *Hunstein II* persuasive, rather than the primary holding. The dissent explains that without publicity, the plaintiff's

## IV. Conclusion

The Court lacks subject matter jurisdiction because Reed has not alleged a concrete injury sufficient to satisfy Article III. The case is dismissed for lack of federal subject matter jurisdiction and remanded forthwith back to the Cook County Circuit Court. The status hearing of September 2, 2022, is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: August 30, 2022

---

mail-vendor theory does not have a close relationship to the claim of publicity given to private life. *Hunstein II*, 17 F.4th at 1041–42 (Tjoflat, J., dissenting).